United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                                SAN JOSE DIVISION

11

12   JASON J. MONTGOMERY,                )        Case No.: C 05-01830 PVT
                                         )
13                    Plaintiff,         )        **ORDER DENYING PLAINTIFF'S**
                                         )        **MOTION FOR SUMMARY**
14         v.                            )        **JUDGMENT OR REMAND**
                                         )
15   JO ANNE B. BARNHART,                )
      Commissioner of Social Security,   )
16                                       )
                     Defendant.          )
17   _____)

18

19        In this Social Security case, Plaintiff brings an action pursuant to 42 U.S.C. §§ 405(g) and

20   1383(c)(3).  Plaintiff is appealing a final decision by the Commissioner of Social Security which

21   denied his claims for disability insurance under Title II of the Social Security Act (42 U.S.C. § 400 et

22   seq.) for the time period beginning on July 29, 2001.  Now before the Court are Plaintiff's Motion for

23   Summary Judgment or Remand, and Defendant's Cross-Motion for Summary Judgment.[1]  For the

24   reasons discussed herein, this court grants defendant's motion for summary judgment.

25

26

27

28   _____
          [1]       The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

                              ORDER, *page 1*

**United States District Court**

For the Northern District of California

I.   **FACTUAL BACKGROUND**

A.   **Plaintiff's Testimony**

Plaintiff testified that he was 31 years old, living with his wife and two children at the time of the hearing. Plaintiff Montgomery completed high school, and subsequently earned an Associates of Arts degree in Industrial Technology and Welding Technology.  Plaintiff attempted to return to work after his alleged onset of disability.  He testified that he quit work after one month because he was going to have another knee surgery.

Plaintiff's past work experience included working as a mechanic, fabricator and foreman. Plaintiff acted as a foreman for five years.  Plaintiff assumed more responsibility in his foreman job, however it was "more of a hands-on" approach.

Plaintiff testified that he wore a left knee brace at the time of the hearing.  He also continued to experience "numbingness" and "tinglyness" in his right forearm.  At the time of the hearing, Plaintiff was able to pick up and care for his one month old baby, who weighed eight pounds.

Plaintiff was wheelchair bound for approximately two months after his first surgery in August 21, 2001.  He then began physical therapy.  He began to use a walker, then crutches and finally a knee brace.  Plaintiff used crutches for approximately one year and then underwent his second surgery on his left knee.  Physical therapy then followed.  Plaintiff underwent surgery on his left knee in July, 2003.

Plaintiff stated that he was unable to perform the most sedentary-type of activities because of swelling, loss of mobility and numbness, and his inability to remain in one position.  Plaintiff felt that his knee might buckle or fold.  Plaintiff testified that he was unable to sit for more than 15 to 20 minutes or he would begin to feel pain.

Plaintiff daily tasks included getting his daughter ready for school and driving her two miles to school.  Plaintiff testifies that he usually felt pain as soon as he got home.  Plaintiff also cared for his newborn child by holding, rocking, changing, feeding, burping and dressing her.  Plaintiff used the free time while the newborn slept to ice his leg.  Plaintiff had been caring for the newborn for three days.

Plaintiff stated that his knee would give out on him occasionally.  He took Vicodin to help

alleviate pain.  He testified that taking Vicodin made him drowsy and lose focus.  Plaintiff stated he must ice his leg for approximately 15 to 30 minute increments every 2 hours during an eight hour period to reduce the swelling.

Plaintiff explained that he would be unable to perform sedentary work because his knee would lock up.  He also stated that he had limited mobility along with pain and swelling.  When Plaintiff's leg would become swollen, he could not bend his knee.

**B. Vocational Expert Testimony**

James Westman, the Vocational Expert (V.E.) testified at the request of the ALJ.  The V.E. testified that Plaintiff's past work involved the work of a mechanic ("medium" with a SVP of "7"[2]), parts clerk and a trailer/hitch mechanic ("medium" with a SVP of "4"), and a welder/metal fabricator ("heavy" with an SVP of "7").

The V.E. stated that Plaintiff has transferable skills including sales and customer service skills.  The V.E. stated that Plaintiff could perform the occupations of electromechanical assembler, telemarketer, cashier, and customer service representative.

When Counsel asked the V.E. to exclude consideration of Plaintiff's education, the V.E. testified that there would be an erosion of 25 to 35 percent with respect to the electrical mechanical assembly position.[3]  The V.E. also acknowledged that he had no statistical model to explain his conclusions but that he based his figures on his experience.

The V.E. further identified two other sedentary positions of "Semi-Conductor Assembler" and Assembler "Inspector."  When asked to assume the truth of Plaintiff's testimony with respect to his need to ice and elevate his leg during the day from 15 to 30 minutes every two hours, the V.E. stated that Plaintiff could not work an eight hour shift.

---

[2]      "The DOT lists a specific vocational preparation (SVP) time for each described occupation.  Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  Social Security Ruling 00-4p (SSR 00- 4p).

[3]      Given the argument from Counsel and the V.E., the ALJ elected to exclude this job from consideration.

**United States District Court**
For the Northern District of California

**C. Relevant Medical Evidence**

**1.    Surgery Regarding Left Knee**

In July, 2001 Plaintiff was involved in an auto accident.  He sustained injuries to his left knee and his right arm.  Plaintiff underwent three surgeries on his left knee.  The first surgery took place in August 2001 involving a diagnostic and surgical arthroscopic-assisted ACL reconstruction, and repair and reconstruction of the lateral collateral ligaments in the entire posterolater capsule.

In June 2002, Plaintiff underwent his second surgery which entailed a diagnostic and surgical arthroscopy, a partial meniscectomy, synovectomy, and chonroplasty.

Then in July 2003, Plaintiff underwent his third surgery on his knee which included a surgical arthroscopy and partial lateral meniscectomy.

**2.    Declaration of Treating Physician**

Dr. Zoellner had been treating Plaintiff since August 2001, the time of Plaintiff's first surgery.  Dr. Zoellner stated that Plaintiff's condition met the criteria for Section 1.03 for reconstructive surgery of a major weight-bearing joint with inability to ambulate effectively.  Dr. Zoellner stated that since the date of the injury Plaintiff had been unable to perform a job because he would be unable to alternate between sitting and standing.  Such action would cause swelling and increase the need to elevate and ice the knee.

Though Dr. Zoellner knew that Plaintiff returned to work in 2002, he stated that Plaintiff was not ready to work, and only returned because of financial problems.  Dr. Zoellner recalls that Plaintiff was unable to work more than a short period due to swelling.  Dr. Zoellner also stated that Plaintiff needed to elevate and ice his knee for 30 minutes throughout the day.

**3.    Clinical Findings**

After Plaintiff's first surgery in August 2001, he was referred to physical therapy.  In December 2001, Plaintiff showed some improvement but continued to have severe pain.  In February 2002, Dr. Zoellner stated that Plaintiff could not return to his work as a mechanic repairperson.  At this time Plaintiff continued to complain of pain and swelling.

In April 2002, Dr. Zoellner identified atrophy in Plaintiff's calf.  Plaintiff was still hampered by pain in his knee.  Dr. Zoellner recommedned continued physical therapy.

United States District Court

For the Northern District of California

1    In May 2002, an MRI revealed a torn meniscus of the left knee.  Plaintiff underwent a

2    diagnostic and surgical arthroscopy, a partial meniscectomy, synovectomy and chondroplasty.

3    In July 2002, Plaintiff's knee examination revealed continued muscle atrophy.  Similar

4    findings were made in August 2002.  Dr. Zoellner then recommended continued aggressive exercises

5    to improve his strength and endurance.

6    Dr. Zoellner stated, in September 2002, that Plaintiff's quadriceps and vastlus medialis were

7    weakened.  Dr. Zoellner found that Plaintiff remained temporarily disabled.

8    In February 2003, Plaintiff's pain increased.  Plaintiff felt that his leg was not stable.  By

9    March 2003, Dr. Zoellner noted left knee tenderness and a lack of strength and endurance.  Dr.

10   Zoellner recommended vocational retraining.

11   On April 7, 2003, Dr. Zoellner's report showed Plaintiff complained of left knee tenderness,

12   lack of strength, and lack of endurance.  While Dr. Zoellner noted that there was continued muscle

13   atrophy, he recommended that Plaintiff continue rehabilitation and vocational training.

14   In May 2003, a consultative evaluation was performed by Dr. Garren on behalf of the

15   Commisioner.  Dr. Garren reported that Plaintiff had full range of motion in both knees.  Dr. Garren

16   stated that Plaintiff could stand for 4 to 6 hours in an 8 hour period.  Dr. Garren concluded that

17   Plaintiff was limited to "light work."

18   On June 12, 2003, Dr. Zoellner noted that Plaintiff complained of knee instability.  An MRI

19   was ordered.  The MRI showed a tear in the posterior portion of the lateral meniscus of the left knee

20   and slight buckling of the ACL.  On July 2003, Plaintiff underwent a third surgery.

21   Following the third surgery, in September 2003, Plaintiff described pain, and a burning

22   sensation in his left knee.  Then in January 2004, Dr. Zoellner stated that Plaintiff's knee is more

23   likely to become swollen when engaging in more strenuous activity.  Then again in March and once

24   more in June of 2004, Plaintiff continued to complain of his condition to Dr. Zoellner.  Dr. Zoellner

25   wrote, "Any time he would stand and plant ... he would get some semblance of giving out or lack of

26   strength or stability.  He will get some swelling related to increased activity."

27   **II.    Procedural Background**

28   Plaintiff first applied for Social Security disability insurance benefits on February 27, 2003

United States District Court

For the Northern District of California

1    That application was denied on October 25, 2004, after a hearing before an Administrative Law

2    Judge ("ALJ").   The ALJ concluded that Plaintiff was unable to perform any of his past relevant

3    jobs as a mechanic, a parts clerk, a welder, or a trailer hitch mechanic.  However, the ALJ also

4    concluded that Plaintiff had a residual functional capacity to perform sedentary work, which is

5    further limited to rare kneeling, climbing, crawling; and rare power torquing and twisting with the

6    right upper extremity. Furthermore, the ALJ found there were a significant number of jobs in the

7    national economy which Plaintiff could perform.  Based on these findings, along with Plaintiff's age

8    (31 at the time of the hearing), some college education and work experience, the ALJ found Plaintiff

9    was not disabled as defined in the Social Security Act.  Accordingly the ALJ found Plaintiff was not

10   entitled to benefits.  The Appeals Council denied Plaintiff's Request for Review.  Consequently, the

11   ALJ's decision became the Commissioner's final decision.  This action ensued.

12

13                    **III.   LEGAL STANDARDS**

14        In reviewing a denial of Social Security disability insurance benefits, courts will set aside an

15   ALJ's decision only if that decision is based on legal error or the findings of fact are not supported

16   by substantial evidence in the record taken as a whole.  *Tacket v. Apfel*, 180 F.3d 1094, 1097-98 (9th

17   Cir. 1999).  Substantial evidence is "more than a mere scintilla" but "less than a preponderance"; it is

18   "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

19   *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (citation omitted); *see also*

20   *Desrosiers v. Secretary of Health & Human Serv.,* 846 F. 2d 573, 576 (9th Cir. 1988).

21        It is insufficient for a claimant to show he experienced short periods of severe impairment to

22   the point of disability.  To be entitled to benefits, the claimant must establish that the disabling

23   severity of the impairment lasted, or could be expected to last, for a continuous period of not less

24   than 12 months.  42 U.S.C. § 423(d)(1)(A); *and see Taylor v. Heckler*, 576 F.Supp. 1172, 1177

25   (N.D. Cal. 1983) (*"Taylor I"*), *aff'd* 765 F.2d 872, 875 (9th Cir. 1985).

26        While courts must look at the record as a whole, considering both evidence that supports and

27   that undermines the ALJ's findings, it is the ALJ's function to resolve conflicts in the evidence.  *See*

28   *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992).  However, even if

**United States District Court**

For the Northern District of California

1   substantial evidence supports the ALJ's factual findings, the decision must nonetheless be set aside if

2   the ALJ applied improper legal standards in reaching the decision.  See *Benitez v. Califano*, 573 F.2d

3   653, 655 (9th Cir. 1978).

4       To disregard the uncontradicted opinion of a treating physician, an ALJ must provide clear

5   and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  If a treating

6   physician's opinion is contradicted by a non-treating doctor, the treating physician's opinion may be

7   rejected only for specific and legitimate reasons supported by substantial evidence in the record.

8   *Ibid.*

9       Similarly, when a claimant demonstrates the existence of a condition that would cause some

10   degree of pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the

11   claimant's subjective testimony regarding his pain and limitations.  *See, e.g., Tonapetyan v. Halter*,

12   242 F.3d 1144, 1147-48 (9th Cir. 2001).  An ALJ may not reject a claimant's statements regarding

13   his limitations merely because they are not supported by objective evidence.  *Id*. at 1147.

14       The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if

15   the evidence can support either outcome, the court may not substitute its judgment for that of the

16   Commissioner.  *See Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); and *Allen v. Secretary of*

17   *Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984) ("If there is more than one rational

18   interpretation of the evidence, the ALJ's conclusion must be upheld.").

19

20       **IV.    DISCUSSION**

21       As discussed below, summary judgment in Defendant's favor is warranted because the ALJ's

22   decision is supported by substantial evidence, and with one exception is free of legal error. As to the

23   one error, it was harmless.

24        Specifically, the ALJ gives specific and legitimate reasons to warrant rejection of Plaintiff's

25   treating physician's opinion.  While the ALJ did not adequately explain why Plaintiff did not meet

26   Listing 1.03, this error was harmless.  Also, the ALJ did not err in her ruling on Plaintiff's residual

27   functional capacity.  The ALJ provided clear and convincing reasons for rejecting Plaintiff's

28   testimony.  The ALJ properly relied on the Vocational Expert's testimony to determine that Plaintiff

United States District Court

For the Northern District of California

1   was not "disabled."  Plaintiff's motion for summary judgment or remand is denied.

2

3        **A.    The ALJ gives specific and legitimate reasons to warrant rejection of treating physician's opinion.**

4

5        The ALJ found Dr. Zoellner's comments to be "wholly inconsistent"  with his previous

references to rigorous physical therapy. Plaintiff argues that the ALJ does not offer "specific and
6
legitimate" reasons for discrediting Dr. Zoellner's comments. *Magallanes v. Bowen*, 881 F.2d 747,
7
751 (9th Cir. 1989).  This court disagrees.
8
         The ALJ can reject the opposed opinion of a treating physician by providing specific and
9
legitimate reasons for doing so. *Id.*  Dr. Zoellner's opinion was contradicted by Hideki Garren, M.D.,
10
Ph.D., who examined Plaintiff in May 2003.  The ALJ has given "specific and legitimate" reasons to
11
reject the treating physician's opinion.
12
        Listing 1.03[4] requires the claimant to have an extreme limitation on the ability to walk. The
13
ALJ noted, that although Zoellner stated that Plaintiff had an extreme limitation on the ability to
14
walk, and met Listing 1.03, he also recommended Plaintiff undergo aggressive physical therapy,
15
which included biking, treadmill exercises, swimming and working with weights.
16
        The ALJ also found Dr. Zoellner's opinions to be inconsistent with Plaintiff's daily activities.
17
The ALJ noted that Plaintiff cared for his two daughters.  He took his seven year old to school and
18
dressed her beforehand.  He also was caring for his newborn daughter. Throughout the day, while
19
caring for the newborn, Plaintiff would do household chores.
20
        The ALJ further noted that because Dr. Zoellner's opinion that Plaintiff had met Listing 1.03
21
was inconsistent with his medical progress notes[5], his opinion was accorded little weight.
22

23
        [4]    "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with
24   inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur,
or is not expected to occur, within 12 months of onset." 20 C.F.R. § 404 Appendix 1, SubPart P; Listing
25   1.00;1.03.  Pursuant to Listing 1.00B2b(1), & (2) the inability to ambulate effectively is "an extreme
limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's
26   ability to independently initiate, sustain, or complete activities. ... To ambulate effectively, individuals
must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out
27   activities of daily living. They must have the ability to travel without companion assistance to and from
a place of employment or school."
28
        [5]    Dr. Zoellner's medical progress notes evidenced that Plaintiff was doing quite well. Also,
Dr. Zoellner's progress notes showed that Plaintiff engaged in a lot of physical activity helping his
mother after his father's death.  The notes also recommend a strengthening program and daily exercise.

ORDER, *page 8*

1    The ALJ did not err in rejecting the treating physician's opinion because the ALJ offered

2    specific and legitimate reasons for do so.

3    **B.    Although the ALJ improperly concluded that Plaintiff did not meet the criteria**
4    **for Listing 1.03, this error was harmless.**

5    The ALJ argues that Dr. Zoellner's opinion that Plaintiff met Listing 1.03 to be "wholly

6    inconsistent" with Dr. Zoellner's repeated recommendation to Plaintiff to undergo rigorous

7    physical therapy.  Defendant has afforded Dr. Zoellner's opinion little weight and further

8    concluded that Plaintiff retained the residual function of sedentary work.  The ALJ at no time

9    adequately explained why Plaintiff did not meet the elements of Listing 1.03.  The ALJ simply

10   concluded that Plaintiff did not meet Listing 1.03.

11   Plaintiff argues that the ALJ did not properly decide that Plaintiff did not meet the criteria

12   of Listing 1.03.  Specifically, Listing 1.03 requires "Reconstructive surgery or surgical arthrodesis

13   of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and

14   return to effective ambulation did not occur, or is not expected to occur, within 12 months of

15   onset."  Though the ALJ concluded that Plaintiff was able to ambulate effectively, the ALJ did not

16   sufficiently explain why Plaintiff did not meet the criteria.  By simply concluding that Plaintiff was

17   able to ambulate effectively, the ALJ has committed legal error.

18   In *Marcia v. Sullivan*, the Ninth Circuit held "that in determining whether a claimant does

19   not equal a listing under step three of the Secretary's disability evaluation process, the ALJ must

20   explain adequately his evaluation of alternative tests and the combined effects of the impairments."

21   *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990).  A statement that a claimant does not equal

22   the listing is insufficient.  *Id.*

23   The ALJ did not sufficiently evaluate Plaintiff's criteria in regards to Listing 1.03 in her

24   decision.  The ALJ simply concluded that Plaintiff's medical impairments do not meet or

25   medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  The

26   ALJ committed legal error by not adequately explaining why Plaintiff did not meet Listing 1.03.  The

27   insufficient explanation of Plaintiff's inability to meet the requirements Listing 1.03 provides this

28   court with the discretion to remand for further proceedings.

United States District Court

For the Northern District of California

After reviewing the entire record, this court finds the ALJ's legal error to be harmless. *See Booz v. Secretary of Health and Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (adopting harmless error standard in context of disability law). Although the ALJ did not adequately explain why Plaintiff did not meet Listing 1.03, there is substantial evidence in the record that supports the ALJ's findings. As discussed in Section III.A. above, among other things, Plaintiff was taking care of his two children, was performing household chores and was participating in rigorous rehabilitation.

**C. The ALJ did not err in her ruling regarding Plaintiff's residual functional capacity.**

The ALJ notes that none of the treatment notes in the record indicate that Plaintiff had any problems with sitting. The ALJ further notes that Plaintiff did not complain of pain while sitting when examined by Dr. Garren. Though Plaintiff complained of swelling and range of motion in his knees, Dr. Garren found no swelling and 100 percent range of motion in both knees.

Also, Dr. Zoellner reported that Plaintiff had no swelling and no effusion, or occasional swelling in September 2002. Dr. Zoellner does not refer to specific swelling while sitting, although Dr. Zoellner stated in his declaration that swelling when sitting was possible.

Since Dr. Zoellner's opinion was properly discounted as to Plaintiff's ability to work, and Dr. Gerren's opinions were based clinical findings, the ALJ properly relied on Dr. Gerren's opinion as substantial evidence to determine Plaintiff's functional capacity. *See Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1195 (9th Cir. 2004) ("ALJ may discredit treating physicians opinions that are conclusory, brief, and unsupported by the record as a whole"); *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) ("[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict").

Dr. Zoellner's opinion was contradicted by Dr. Garren's opinion. Dr. Garren's opinion was

based on independant clinical findings.  The ALJ, taking into account both Dr. Garren's opinion and Dr. Zoellner's opinion properly resolved the conflict as to Plaintiff's residual functional capacity.

For the forgoing reasons, the ALJ did not err in rejecting Dr. Zoellner's opinion nor did the ALJ err in finding that Plaintiff could perform sedentary work.

**D.  The ALJ provided clear and convincing reasons to discredit Plaintiff's testimony.**

"If the ALJ finds the claimants pain testimony not to be credible, the ALJ 'must specifically make findings that support this conclusion,' and the findings 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the ] claimant's testimony." *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)(*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In *Rollins,* the claimant argued that the ALJ improperly assessed her credibility "regarding the severity of her pain and the degree to which it incapacitates her." *Id.* at 856-57.  The Ninth Circuit held that the claimant's testimony was properly discredited when the ALJ explained that the claimant picked up her kids from school, tae kwon do lessons, and soccer games. *Id.* at 857.  The ALJ stated that claimant cared for her kids six days a week from the morning to the late evening because her husband worked long hours. *Id.*  The claimant also did activities such as; cooking, housekeeping, laundry, and shopping. *Id.*  The Ninth Circuit upheld the ALJ's decision which discredited the claimant's testimony because the ALJ gave clear and convincing reasons to prove the claimant's pain does not incapacitate her. *Id.*

Plaintiff's facts are quite similar to those in *Rollins.*  Though Plaintiff testified that he could not sit for more than fifteen to twenty minutes at a time without his knee swelling, there is nothing in the record that shows Plaintiff's difficulty with sitting.  The ALJ also witnessed Plaintiff sitting

through a 30 minute hearing with no signs of Plaintiff's knee swelling or locking up.[6]  Also, the ALJ noted that Plaintiff participated in many activities which supported the ALJ's decision to discredit Plaintiff's testimony.  Plaintiff did household chores such as; cleaning, mopping and laundry. Plaintiff also cared for his two daughters, a newborn and a seven year old.  Plaintiff did other tasks such as feeding his dogs.  The record also shows that he helped his mother move heavy things.

The ALJ's reasons for discrediting Plaintiff's testimony are clear and convincing.  Plaintiff's action of caring for children, and doing household chores is much more taxing than sitting at a desk. Plaintiff's actions of driving, cleaning and dressing his children takes much more effort and places more strain on Plaintiff's knee than does sitting in a chair. Though doing some household chores is not determinative of disability,[7] the fact that Plaintiff can feed his children, take care of his dogs, and take his daughter to school can support the ALJ's finding that Plaintiff's testimony is not wholly credible. *Batson v. Commissioner of Social Security,* 359 F.3d at 1196.

Because there is substantial evidence supporting the ALJ's findings, this court defers to the ALJ's findings.

**E.  The ALJ properly relied on testimony from the Vocational Expert**

Plaintiff argues that the ALJ improperly relied on the Vocational Expert's answers to hypothetical questions because the hypothetical questions were incomplete.  *See, e.g., Jones,* 760 F.2d at 988 *citing Maounis v. Heckler,* 738 F.2d 1032, 1034 (9th Cir. 1984) Plaintiff contends the hypothetical was incomplete because it does not include Plaintiff's inability to sit for more than 15 to 20 minutes.  This court disagrees.

---

[6]    In *Gallant v. Heckler*, the Ninth Circuit stated that the "fact that a claimant does not exhibit physical manifestations ... at the hearing" provides little support for the ALJ's determination. However, the ALJ did not solely depend on Plaintiff's pain, or lack thereof, during testimony, but relied on other factors. *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984); *See Verduco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999), which held that the ALJ's reliance on observations of claimant during hearing was proper.

[7]    *Cooper v. Bowen*, 815 F.2d 557 (9th Cir. 1987).

United States District Court

For the Northern District of California

1    If a hypothetical question does not reflect all of the claimant's limitations then it is

2  incomplete.  *See Andrews v. Shalala*, 53 F.3d at 1043.  "Although the hypothetical may be based on

3  evidence which is disputed, the assumptions in the hypothetical must be supported by the record."

4  *Andrews,* 53 F.3d at 1043 *citing Gallant,* 753 F.2d at 1456.

5

6    The hypothetical question describes a 31 year old individual who retains the residual

7  functional capacity for sedentary exertional work activity, limited to "rare kneeling, climbing,

8  crouching, and crawling and rare power torquing or twisting with the right upper extremity."

9    The ALJ properly excluded evidence of Plaintiff's inability to sit for a prolonged period

10  because there was no evidence in the record of Plaintiff complaining of pain or discomfort due to

11  prolonged sitting.  Dr. Zoellner had never stated that Plaintiff could not sit for a prolonged period of

12  time and never cited any instances where Plaintiff complained of prolonged sitting.  The only

13  evidence is Plaintiff's testimony which stated that he was unable to sit for more than 15 to 20

14  minutes before experiencing stiffness.  However, the ALJ discounted the Plaintiff's testimony as

15  described above.

16    The ALJ relied on Dr. Garren's opinion that Plaintiff could perform light work, and was

17  limited to standing for four hours a day in an eight hour period.  In addition, the ALJ offered the

18

19  Plaintiff the benefit of the doubt when asking the hypothetical.  The ALJ asked whether Plaintiff

20  could perform sedentary work, as opposed to light work, existing in significant numbers in the

21  national economy.  Though Dr. Garren opined that Plaintiff could perform light work, the V.E. still

22  found a significant amount of jobs available to Plaintiff if he was only capable of sedentary work.

23

24    For the forgoing reasons, Plaintiff has stated no cause for remand.

25

26

27

28  **V.    CONCLUSION**

Because Plaintiff has not established that the ALJ committed reversible error or that the ALJ

United States District Court

For the Northern District of California

1 findings were not supported by substantial evidence,

2      IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment or Remand is

3 DENIED.  IT IS FURTHER ORDERED that Defendant's motion for summary judgment is

4 GRANTED.

5

6 Dated: *2/15/06*

7

8

9      PATRICIA V. TRUMBULL
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28